| | | |
|---|---|---|
| JEFFREY LINES, individually and on behalf of all others similarly situated, | § § § | CASE NO. 1:17-cv-0072 |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| AMAZON.COM, INC.; TENET CONCEPTS, LLC; and JOHN DOES 1-5, | § § § | |
| Defendants. | § § § | |

## ORIGINAL COMPLAINT

Plaintiff JEFFREY LINES ("Plaintiff Lines") on behalf of himself and all others similarly situated (collectively, "Drivers") by and through his attorneys, DINOVO PRICE ELLWANGER & HARDY, LLP and VALLI KANE & VAGNINI, LLP, bring this action for damages and other legal and equitable relief from Defendants, AMAZON.COM, INC. ("Amazon"), TENET CONCEPTS, LLC ("Tenet Concepts"), and JOHN DOES 1-5 (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. 201 *et seq.*, and for violation of Title Two of the Texas Labor Code ("TLC") §§ 62.001 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.      This is a collective and class action brought by Plaintiff Lines challenging acts committed by Defendants against Plaintiff Lines and those similarly situated which amounted to violations of federal and state wage and hour laws.

2.     Tenet Concepts maintains a service contract with Amazon, one of the country's largest online retail stores, to provide one (1) to two (2) hour delivery services of Amazon's merchandise.

3.     Plaintiff Lines is a delivery driver who was employed by Defendants to carry out deliveries of Amazon's merchandise from Amazon's warehouses to their customers' addresses.

4.     First, Defendants' regular failure to pay Plaintiff Lines and all other similarly situated employees the statutorily required overtime rate of time and a half (½) violates the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and any other cause(s) of action that can be inferred from the facts set forth herein.  Defendants violate these laws by engaging in a systematic scheme of altering Drivers' paychecks in order to deprive them of their statutorily required overtime pay.

5.     Second, Defendants' regular failure to pay Plaintiff Lines and all other similarly situated employees the statutorily required minimum wage for all hours worked in a workweek violates the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), Title Two of the Texas Labor Code ("TLC") §§ 62.001 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.  Defendants violate these laws by engaging in a systematic scheme of failing to reimburse Drivers for their incurred expenses and by altering Drivers' paychecks in order to deprive them of their statutorily required minimum wage, effectively forcing Drivers to work "off-the-clock."

6.     Third, Defendants' retention of all or some of the tips earned by Plaintiff Lines and all other similarly situated employees violates the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and any other cause(s) of action that can be inferred from the facts set forth herein.  Defendants violate these laws by engaging in a systematic scheme of retaining all or

some of Drivers' earned tips and by not providing Drivers with any documentation that accurately reflects their allotted tips.

7.     Fourth, Plaintiff Lines' unlawful termination violates the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and any other cause(s) of action that can be inferred from the facts set forth herein.   Defendants violate these laws by terminating Plaintiff Lines' employment in retaliation for his complaints against Defendants' unlawful conduct that violates the FLSA.

8.     Plaintiff Lines alleges, on behalf of himself and similarly situated current and former employees who elect to opt into this action pursuant to the FLSA, that they are entitled to recover (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime, (iii) earned and unlawfully retained tips, (iv) liquidated damages, (v) interest, and (vi) attorney fees and costs pursuant to the FLSA, 29 U.S.C. §§201 *et seq*., and further relief as this Court finds necessary and proper.

9.     Plaintiff Lines also brings this action, pursuant to Fed. R. Civ. P. 23, on behalf of a class of all persons who are and were employed by Defendants as delivery drivers  during the past three years through the final date of the disposition of this action who were not paid the statutorily required minimum wage for all hours worked by them in a workweek, as required by the TLC who are entitled to recover: (1) back pay, (2) liquidated damages, (4) attorney's fees and costs, and (5) interest, and further relief as this Court finds necessary and proper.

10.     In addition to the class and collective actions, Plaintiff Lines brings this action pursuant to the FLSA to remedy his unlawful retaliatory discharge by recovering: (1) back pay, (2) liquidated damages, (3) emotional damages, (4) attorney's fees and costs, and (5) interest, and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under 29 U.S.C. § 201 *et. seq.*

12.     The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## THE PARTIES

14.     Plaintiff Lines is a citizen of Texas and resides in Dallas, Texas.

15.     At all relevant times, Plaintiff Lines was an employee within the meaning of the FLSA and TLC.

16.     Upon information and belief, Amazon is incorporated under the laws of the state of Delaware and has its principal place of business in Seattle, Washington.

17.     Upon information and belief, Defendant Amazon also maintains multiple places of business within the State of Texas and within this District.

18.     Defendant Amazon transacts business in Texas by employing Plaintiff Lines and those similarly situated as delivery drivers in Texas.

19.     Amazon has at all relevant times been an employer covered by the FLSA and the TLC.

20.     Upon information and belief, the amount of qualifying annual volume of business for Amazon exceeds $500,000.00 and thus subjects Amazon to the FLSA's overtime and minimum wage requirements.

21.     Upon information and belief, Amazon is engaged in interstate commerce. This independently subjects Amazon to the overtime and minimum wage requirements of the FLSA.

22.     Upon information and belief, Tenet Concepts is incorporated under the laws of the state of Texas and has its principal place of business in Austin, Texas.

23.     Defendant Tenet Concepts transacts business throughout Texas by employing Plaintiff Lines and those similarly situated as delivery drivers in Texas.

24.     Tenet Concepts has at all relevant times been an employer covered by the FLSA and the TLC.

25.     Upon information and belief, the amount of qualifying annual volume of business for Tenet Concepts exceeds $500,000.00 and thus subjects Tenet Concepts to the FLSA's overtime and minimum wage requirements.

26.     Upon information and belief, Tenet Concepts is engaged in interstate commerce. This independently subjects Tenet Concepts to the overtime and minimum wage requirements of the FLSA.

27.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as John Does 1-5, inclusive, are currently unknown to

Drivers, who therefore sue Defendants by such fictitious names pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 33.004.

28.      Plaintiff Lines alleges, upon information and belief, that each of Defendants named as John Doe(s) are legally responsible in some manner for the unlawful acts referred within the complaint.

29.      Plaintiff Lines will seek leave of court to amend this Complaint to reflect the true names and capacities of Defendants designated as "John Does 1-5" when such identities become known.

30.      Defendants jointly employed Plaintiff Lines and those similarly situated by employing or acting in the interest of employer towards Plaintiff and directly or indirectly, jointly or severally, including without limitation, controlling and directing the terms of employment and compensation of all similarly situated employees.

**STATEMENT OF THE FACTS**

31.      Plaintiff Lines was employed as a delivery driver by Defendants from October 6, 2015, until his unlawful termination on or around January 22, 2016.

32.      Tenet Concepts is a distribution company that provides, among other things, delivery services for clientele.

33.      Amazon is one of the country's largest online retail stores that provides merchandise to customers.

34.      Throughout all times relevant to this matter, Tenet Concepts maintained a service contract with Amazon to provide delivery services for Amazon's merchandise to Amazon's customers.

35.     Upon information and belief, Tenet Concepts employs over four hundred (400) delivery drivers who operate out of Amazon's warehouses located in Texas, California, and Illinois.

36.     Specifically, Plaintiff Lines operated out of Amazon's warehouse located in Irving, Texas.

37.     Drivers' primary job duties were to deliver Amazon's merchandise to customers within one (1) to two (2) hours after the purchase was made through Amazon's Prime Now mobile application ("App").

38.     Drivers wore uniforms that identified them as representatives of Amazon Prime Now.

39.     Drivers were compensated at or around $7.25 per hour.

40.     Drivers received their paychecks every two weeks.

41.     All hours Drivers worked were not accounted for nor compensated on their paychecks.

42.     In addition to their pay, Defendants promised Drivers, through a written policy, tips and reimbursements for the expenses they incurred during deliveries.

43.     When Defendants issued the customers' tips to Drivers on their paychecks, which was infrequent, Defendants refused to issue an accurate record of the allotted tip breakdown.

44.     Drivers were never informed of their total actual amount of tips.

45.     Defendants posted the Drivers weekly shifts on bulletin boards.

46.     Drivers were routinely scheduled to work six (6) or seven (7) consecutive days in a workweek.

47.     Drivers routinely worked in excess of forty (40) hours per workweek.

48. Drivers were not properly compensated at the overtime premium for all hours worked in excess of forty (40) hours per workweek.

49. Drivers were required to obtain management approval to switch shifts with one another.

50. If there was "not enough work," Defendants sent Drivers home without pay.

51. Drivers clocked in and out by presenting their identification cards, which bore both Amazon's and Tenet Concepts' logos, to Defendants' dispatchers.

52. Defendants required Drivers to arrive at their Amazon warehouse ten (10) to fifteen (15) minutes before their scheduled clock-in time.

53. Drivers were not compensated for the ten (10) to fifteen (15) minutes they were required to be at their Amazon warehouse prior to clocking in, effectively forcing them to work "off-the-clock."

54. Drivers were not permitted to take meal breaks.

55. Defendants, however, deducted a one half hour (1/2) of pay for each day worked from the Drivers' paychecks for meal periods, effectively forcing them to work "off-the-clock."

56. After "clocking in" at their Amazon warehouse, Drivers waited for Defendants' dispatcher to assign them packages for delivery.

57. Amazon unilaterally decided the quantity of packages assigned to Drivers.

58. Amazon unilaterally decides which packages Drivers will deliver.

59. After receiving their assigned packages, Drivers scanned each package into the App to provide real time tracking to Amazon's customers.

60. Drivers were not permitted to reject delivery assignments, nor could they request that deliveries be restricted to a particular geographical areas.

61.     If Drivers did not abide by Defendants' delivery assignments or routes they were subjected to discipline, which included termination.

62.     Defendants instructed Drivers to deliver assigned packages in a set sequence determined by Defendants.

63.     A Driver's assigned delivery route began with the delivery that is furthest away from the Amazon warehouse and ended with the delivery closet to the Amazon warehouse.

64.     Drivers were assigned eight (8) to ten (10) packages per route that were required to be delivered within two hours.

65.     Defendants generated and dictated Drivers' delivery routes.

66.     Drivers were assigned routes that spanned up to or more than two hundred and fifty (250) miles.

67.     Drivers did not receive mileage reimbursement and/or credit from Defendants.

68.     Defendants tracked Drivers while they were on delivery routes.

69.     Defendants' dispatchers frequently called and/or sent text messages to Drivers to provide them with alternate delivery routes and/or to inform them that they were running late.

70.     After delivering a set of assigned packages, Drivers returned to their Amazon warehouse to receive another assignment of packages. This process repeated multiple times throughout the work day.

71.     Following a delivery, the App suggested a default tip of $5.00 for the delivery Driver. Customers were permitted to modify the tipped amount to their desired amount.

72.     Upon information and belief, before a customer left a tip, the App stated to them: "If you elect to leave a tip, the entire tip goes to your courier."

73.     Upon information and belief, Defendants maintained a policy that prohibited customers from leaving cash tips, requiring all tips to be made through the app, via credit card, and payable to Defendants.

74.     Upon information and belief, Drivers never received the correct tip total during each pay period as they were continually given an amount less than what they actually received.

75.     Upon information and belief, Defendants never provided Drivers with any record or receipt of which customer tipped them or the amount they were tipped.

76.     Upon information and belief, Defendants retained all or some of the tips Drivers received.

77.     Upon information and belief, Drivers were required to use their own personal vehicles to deliver Amazon's merchandise.

78.     Upon information and belief, Drivers incurred significant out of pocket expenses from the use of their vehicles for deliveries, tolls, and keeping their vehicles running for extraordinary durations of time throughout their shift(s).

79.     The incurred out of pocket costs for the operation of their vehicles frequently drove the Drivers' hourly rate well below both federal and state minimum wage and overtime requirements.

80.     Despite Defendants' written policy, Drivers were often denied reimbursements of incurred expenses in the form of a car allowance (mileage, wear and tear, gas, tolls, etc.).

81.     Upon information and belief, Drivers were required to submit their toll bills to Defendant Tenet Concepts' supervisors immediately after they received and paid the toll bills.

82.     Upon information and belief, Defendant Tenet Concepts' supervisors were then required to submit the toll bill to Defendant Amazon.

83. Upon receipt of the toll bill, Defendant Amazon was to reimburse Drivers for the total amount of the toll bill.

84. Plaintiff Lines was never reimbursed for any of the toll bills he submitted to his supervisor, Steven (last name unknown).

85. Upon information and belief, when Drivers were reimbursed for gas expenses, which was infrequent, they were only reimbursed for the pre-tax cost of gas and mileage and not the total amount. Thus, Drivers still incurred out of pocket expenses that drove their hourly rate below the minimum wage.

86. Upon information and belief, on or around November 26, 2015, Amazon assigned the delivery routes of almost all of the delivery drivers that were operating out of the warehouse located in Irving, Texas, to new employees known as "Amazon flex drivers."

87. Upon information and belief Amazon flex drivers were individually contracted by Amazon.

88. Upon information and belief Amazon flex drivers were paid between $18.00 and $25.00 per hour.

89. On or around November 26, 2015, Plaintiff Lines complained to Steven regarding Defendants' failure to compensate Drivers the overtime premium for all hours worked in excess of forty (40) hours per week, Defendants' failure to properly reimburse Drivers for toll, mileage, and gas expenses, and Defendants' retention of the Drivers' earned tips.

90. Steven stated to Plaintiff Lines that he would inform the owner of Defendant Tenet Concepts of his November 26, 2015 complaint and that he was going to remedy the complaint.

91. Defendants never responded to the November 26, 2015 complaint.

92.     Around December 10, 2015, Plaintiff Lines complained to Steven regarding Defendants' failure to compensate Drivers the overtime premium for all hours worked in excess of forty (40) hours per week, Defendants' failure to properly reimburse Drivers for toll, mileage, and gas expenses, and Defendants' retention of the Drivers' earned tips.

93.     Around December 22, 2015, Plaintiff Lines again complained to Steven regarding Defendants' failure to compensate Drivers the overtime premium for all hours worked in excess of forty (40) hours per week, Defendants' failure to properly reimburse Drivers for toll, mileage, and gas expenses, and Defendants' retention of the Drivers' earned tips.

94.     Following Plaintiff Lines' December 22, 2015, complaint, Steven became increasingly agitated with Plaintiff Lines.

95.     On or around January 22, 2016, Steven informed Plaintiff Lines that he "did not have to work anymore" because he "would not keep his mouth shut and stop complaining" about Defendants' failure to compensate Drivers the overtime premium for all hours worked in excess of forty (40) hours per week, Defendants' failure to properly reimburse Drivers for toll, mileage, and gas expenses, and Defendants' retention of the Drivers' earned tips.

96.     Plaintiff Lines remained unemployed for over two (2) months.

97.     Plaintiff Lines was forced to pawn his personal property to afford his rent and utilities bills.

98.     Due to his lack of employment, Plaintiff Lines was unable to recover all of his pawned property.

99.     Plaintiff Lines' unlawful termination caused him to suffer from, among other things, lack of sleep and appetite, weight loss, severe stress, depression, and anxiety.

# FLSA COLLECTIVE ACTION ALLEGATIONS

## A. FLSA OVERTIME COLLECTIVE CLASS

100.    Plaintiff Lines seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following collective class:

> All delivery drivers employed by Defendants during the relevant time period, who have been subject to Defendants' policies of requiring them to work in excess of forty (40) hours per work week without proper compensation of overtime required by the FLSA.

101.    At all relevant times, Plaintiff Lines was similarly situated to all such individuals in the FLSA Overtime Collective Class[1] because while employed by Defendants, Plaintiff Lines and all FLSA Overtime Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per workweek and were subject to Defendants' policies and practices of willfully failing to pay them at the statutorily required rate of one and one half (1½) times their hourly rate for hours worked in excess of forty (40) per workweek.

102.    Defendants are and have been aware of the requirement to pay Plaintiff Lines and the FLSA Plaintiffs at a rate of one and one half (1 ½) times their hourly rate for hours worked in excess of forty (40) per workweek, yet willfully chose not to.

103.    The FLSA Overtime Plaintiffs, under Plaintiff Lines' FLSA claim, are readily discernable and ascertainable. All FLSA Overtime Plaintiffs' contact information is readily available in Defendants' records.  Notice of this collective action can be made as soon as the Court determines.

---

[1]    Hereinafter referred to as the FLSA Overtime Plaintiffs.

104.     The number of FLSA Overtime Plaintiffs in the class are too numerous to join in a single action, necessitating class recognition.

105.     All questions relating to Defendants' violation of the FLSA share the common factual basis with Plaintiff Lines.  No claims under the FLSA relating to the failure to compensate for overtime are specific to Plaintiff Lines and the claims are typical of the violations of the FLSA perpetrated by Defendants.

106.     Plaintiff Lines will fairly and adequately represent the interests of the collective class and has no interests conflicting with the class.

107.     A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

108.     Plaintiff Lines' attorneys are familiar and experienced with class action litigation as well as employment and labor law litigation.

109.     The public benefits from the case being brought as a collective action as it saves the Court's time and efforts by reducing the multitude of claims to a single litigation.  Prosecution of separate actions by individual FLSA Overtime Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

110.     The questions of law and fact are nearly identical for all FLSA Overtime Plaintiffs and therefore proceeding as a collective action is ideal.  Without this method, continued violations of the FLSA will undoubtedly continue.

**B.  FLSA MINUMUM WAGE COLLECTIVE CLASS**

111.     Plaintiff Lines seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following collective class:

All delivery drivers employed by Defendants during the relevant time period, who have been subject to Defendants' policies of requiring delivery drivers to work "off-the-clock" and/or to incur business expenses without proper reimbursement, which ultimately brings their hourly rate below the statutorily required minimum wage.

112.    At all relevant times, Plaintiff Lines was similarly situated to all such individuals in the FLSA Minimum Wage Collective Class[2] because while employed by Defendants, Plaintiff Lines and FLSA Minimum Wage Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or similar manner, were paid the same or similar rate, were required to work "off-the-clock." Furthermore, in the same manner, through Defendants' practice of not reimbursing Plaintiff Lines and the FLSA Minimum Wage Plaintiffs for their incurred expenses, their hourly rate was below the statutorily required minimum wage.

113.    Defendants are and have been aware of the requirement to pay Plaintiff Lines and members of the FLSA Minimum Wage Plaintiffs at a rate of $7.25, yet willfully chose not to.

114.    The FLSA Minimum Wage Plaintiffs, under Plaintiff Lines' FLSA claim, are readily discernable and ascertainable. All FLSA Minimum Wage Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines.

115.    The number of FLSA Minimum Wage Plaintiffs in the class are too numerous to join in a single action, necessitating class recognition.

116.    All questions relating to Defendants' violation of the FLSA share the common factual basis with Plaintiff Lines. No claims under the FLSA relating to the failure to compensate the minimum wage for all hours worked are specific to Plaintiff Lines and the claims are typical of the violations of the FLSA perpetrated by Defendants.

---

[2] Hereinafter referred to as the FLSA Minimum Wage Plaintiffs.

117.     Plaintiff Lines will fairly and adequately represent the interests of the FLSA Minimum Wage Plaintiffs and has no interests conflicting with the class.

118.     A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

119.     Plaintiff Lines' attorneys are familiar and experienced with class action litigation as well as employment and labor law litigation.

120.     The public benefits from the case being brought as a collective action as it saves the Court's time and efforts by reducing the multitude of claims to a single litigation.  Prosecution of separate actions by individual FLSA Minimum Wage Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

121.     The questions of law and fact are nearly identical for all FLSA Minimum Wage Plaintiffs and therefore proceeding as a collective action is ideal.  Without this method, continued violations of the FLSA will undoubtedly continue.

## C.  FLSA TIP COLLECTIVE CLASS

122.     Plaintiff Lines seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following collective class:

> All delivery drivers employed by Defendants during the relevant time period, who have been subject to Defendants' policies of retaining all or some of the delivery drivers' tips they received from customers following a delivery.

123.     At all relevant times, Plaintiff Lines was similarly situated to all such individuals in the FLSA Tip Collective Class[3] because while employed by Defendants, all FLSA Tip Collective Class members performed similar tasks, were subject to the same laws and regulations,

---

[3] Hereinafter referred to as the FLSA Tip Plaintiffs.

were paid in the same or substantially similar manner, were paid the same or similar rate, received tips for their delivery services from Amazon's customers, and were subjected to Defendants' policies and practices of retaining all or some those tips.

124. Defendants are and have been aware of the FLSA prohibition of employers retaining all of some of their employees earned tips, yet willfully chose to violate that prohibition.

125. The FLSA Tip Plaintiffs, under Plaintiff Lines' FLSA claim, are readily discernable and ascertainable. All FLSA Tip Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines.

126. The number of FLSA Tip Plaintiffs in the class are too numerous to join in a single action, necessitating class recognition.

127. All questions relating to Defendants' violation of the FLSA share the common factual basis with Plaintiff Lines. No claims under the FLSA relating to the failure to compensate for overtime are specific to Plaintiff Lines and the claims are typical of the violations of the FLSA perpetrated by Defendants.

128. Plaintiff Lines will fairly and adequately represent the interests of the collective class and has no interests conflicting with the class.

129. A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

130. Plaintiff Lines' attorneys are familiar and experienced with class action litigation as well as employment and labor law litigation.

131. The public benefits from the case being brought as a collective action as it saves the Court's time and efforts by reducing the multitude of claims to a single litigation. Prosecution

of separate actions by individual FLSA Tip Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

132.     The questions of law and fact are nearly identical for all FLSA Tip Plaintiffs and therefore proceeding as a collective action is ideal.  Without this method, continued violations of the FLSA will undoubtedly continue.

## RULE 23 CLASS ACTION ALLEGATIONS

133.     Plaintiff Lines additionally seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous three years, were subjected to violations of the TLC ("Texas Class").

134.     The Class which Plaintiff Lines seeks to define includes:

> All delivery drivers employed by Defendants during the relevant time period, who have been subject to Defendants' policies of requiring delivery drivers to work "off-the-clock" and/or to incur business expenses without proper reimbursement, which ultimately brings their hourly rate below the statutorily required minimum wage.

135.      The number of class members protected by the TLC and who have suffered under Defendants violation of the TLC, as set forth herein, are too numerous to join in a single action, necessitating class recognition.

136.     All questions relating to Defendants' violation of the TLC share the common factual basis with the class representative, Plaintiff Lines. No claims under the TLC relating to the denial of minimum wage are specific to Plaintiff Lines or any Texas Class member and the claims are typical of the violations of the TLC perpetrated by Defendants.

137.      Plaintiff Lines will fairly and adequately represent the interests of all Texas Class members.

138.     A class action is superior to all other methods and is necessary in order to fairly and completely litigate the violations of the TLC which have occurred. Specifically, the violation of the TLC's requirements for minimum wage is at issue.

139.     The class members under Plaintiff Lines' TLC claims are readily discernable and ascertainable.   All Texas Class members'[4] contact information is readily available from Defendants as such information is likely in their personnel files.  Notice of this class action can be offered by any means permissible under the FRCP Rule 23 requirements.

140.     Plaintiff Lines brings these claims on his own behalf as well as those of the Texas Class Plaintiffs through his attorneys who are well associated with class action litigation as well as employment litigation.

141.     Plaintiff Lines is able to fairly represent and properly protect the interests of the Texas Class Plaintiffs and has no interests conflicting with the class.

142.     The public benefits from this case being brought as a class action as it saves the Court's time and efforts by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual Texas Class Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

143.     Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff Lines' willingness to proceed against Defendants.  The anonymity inherent in a class action suit further provides safety against retaliation and/or undue stress and fear for the Texas Class Plaintiffs' jobs and continued employment.

---

[4] Hereinafter referred to as the Texas Class Plaintiffs.

144.     The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal.  Without this method, continued violations of the TLC will undoubtedly be permitted to continue.

145.     Whether Plaintiff Lines and the Texas Class Plaintiffs were properly compensated at the minimum wage for all hours worked is a common question which can easily be resolved through the class action process.

### CAUSES OF ACTION
### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF

**The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, Made by Plaintiff Lines on Behalf of All FLSA Overtime Collective Class Plaintiffs**

146.     Plaintiff Lines and the FLSA Overtime Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

147.     Throughout the period covered by the applicable statute of limitations, Plaintiff Lines and other FLSA Overtime Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

148.     Upon information and belief, Defendants knowingly failed to pay Plaintiff Lines and the FLSA Overtime Plaintiffs for all hours worked and failed to pay Plaintiff Lines and the Overtime Plaintiffs members the statutorily required overtime rate for all hours worked in excess of forty (40) per workweek.

149.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

150.     Defendants' conduct was in violation of the Fair Labor Standards Act.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF

**The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, Made by Plaintiff Lines on Behalf of All FLSA Minimum Wage Collective Class Plaintiffs**

151. Plaintiff Lines and the FLSA Minimum Wage Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

152. Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiff Lines and the FLSA Minimum Wage Plaintiffs the minimum wage for hours worked "off-the-clock" due to Defendants' practice of wrongfully reducing the number of reported hours that employees worked by deducting meal periods and working before their designated work shift. In addition to reduction of actual hours worked, Plaintiff Lines and the FLSA Minimum Wage Plaintiffs were required to incur all costs and expenses for the use of their vehicles to make deliveries on behalf of Defendants. After incurring these costs, Plaintiff Lines' and the FLSA Minimum Wage Plaintiffs' hourly wages were reduced below minimum wage in violation of the FLSA, for which they were not properly reimbursed.

153. Plaintiff Lines and FLSA Minimum Wage Plaintiffs are entitled to payment at the minimum wage for all hours worked.

154. Upon information and belief, Defendants knowingly failed to pay Plaintiff Lines and the FLSA Minimum Wage Plaintiffs for all hours worked in a workweek.

155. Defendants' conduct was willful and lasted for the duration of the relevant time periods.

156. Defendants' conduct was in violation of the Fair Labor Standards Act.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF

## The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, Made by Plaintiff Lines on Behalf of All FLSA Tip Collective Class Plaintiffs

157.     Plaintiff Lines and the FLSA Tip Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

158.     Throughout the period covered by the applicable statute of limitations, Defendants had a policy and practice of not disclosing the amount of tips Plaintiff Lines and the FLSA Tip Plaintiffs earned from customers for their deliveries.

159.     Upon information and belief, Defendants knowingly retained all or some the tips given by Defendants' customers to Plaintiff Lines and the FLSA Tip Plaintiffs.

160.     Plaintiff Lines and FLSA Tip Plaintiffs are entitled to all tips they received from each and every delivery.

161.     Upon information and belief, Defendants knowingly retained Plaintiff Lines' and the FLSA Tip Plaintiffs' tips.

162.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

163.     Defendants' conduct was in violation of the Fair Labor Standards Act.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF

## The Texas Labor Code §§ 62.001 *et seq.*, Made by Plaintiff Lines on Behalf of All Texas Class Plaintiffs

164.     Plaintiff Lines and the Texas Class Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

165.     Defendants have violated the Texas Labor Code by failing to pay Plaintiff Lines and the Texas Class Plaintiffs their full and proper compensation.

166. Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiff Lines and the Texas Class Plaintiffs the minimum wage for hours worked "off-the-clock" due to Defendants' practice of wrongfully reducing the number of reported hours that employees worked by deducting meal periods and working before their designated work shift. In addition to reduction of actual hours worked, Plaintiff Lines and the Texas Class Plaintiffs were required to incur all costs and expenses for the use of their vehicles to make deliveries on behalf of Defendants. After incurring these costs, Plaintiff Lines' and the Texas Class Plaintiffs' hourly wage were reduced below minimum wage in violation of the Texas Labor Code, for which they were not properly reimbursed.

167. Plaintiff Lines and the Texas Class Plaintiffs are entitled to payment at the minimum wage for all hours worked.

168. Defendants' conduct was willful and lasted for the duration of the relevant time periods.

169. Defendants' conduct was in violation of the Texas Labor Code.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF

### The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

170. Plaintiff Lines re-alleges and incorporates by reference all allegations in all preceding paragraphs.

171. Plaintiff Lines opposed Defendants' unlawful conduct that violated the FLSA by refusing to compensate Drivers the overtime premium for all hours worked in excess of forty (40) hours per week, failing to properly reimburse Drivers for toll, mileage, and gas expenses, and by retaining the Drivers earned tips.

172. Plaintiff Lines made these complaints to his supervisor, Steven, on November 15, 2015, December 10, 2015, and December 22, 2015.

173.     As a direct retaliatory result of Plaintiff Lines' complaints, Defendants unlawfully terminated him on or around January 22, 2016.

174.     Defendants' conduct was in violation of the Fair Labor Standards Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lines, on behalf of himself and all FLSA and Texas Class Plaintiffs employed by each Defendant, demand judgment against Defendants as follows:

175.     At the earliest possible time, Plaintiff Lines should be allowed to give notice of this collective action, or the Court should issue such notice, to all Collective Action Members. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

176.     Designation of Plaintiff Lines as representatives of the FLSA Collective and Rule 23 Class, and Plaintiff's counsel as Class Counsel;

177.     Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

178.     Certification of this action as a class action pursuant to FRCP Rule 23 for the purposes of the claims brought on behalf of all Texas Class members under the Texas Labor Code;

179.     Demand a jury trial on these issues to determine liability and damages;

180.     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

181. A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, ("FLSA"), the Texas Labor Code Texas Labor Codes ("TLC") §§ 62.001 *et seq.*;

182. All damages which Plaintiff Lines and all FLSA and Texas Class Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

183. All damages which Plaintiff Lines has sustained as a result of Defendants' conduct, including back pay, general and special damages for lost compensation and job benefits he would have received but for Defendants' unlawful retaliatory conduct, and for emotional distress humiliation, embarrassment, and anguish;

184. An award to Plaintiff Lines and all FLSA and Texas Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

185. An award to Plaintiff Lines and all FLSA and Texas Class Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

186. An award to Plaintiff Lines and all FLSA and Texas Class Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

187. Awarding Plaintiff Lines and all FLSA and Texas Class Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

188.    Pre-judgment and post-judgment interest, as provided by law; and

189.    Granting Plaintiff Lines and all FLSA and Texas Class Plaintiffs other and further

relief as this Court finds necessary and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Lines demands a

trial by jury on all questions of fact raised by this complaint.

Dated:   February 2, 2017
            Austin, Texas

Respectfully submitted,

Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@dpelaw.com
**DiNovo Price Ellwanger & Hardy LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas 78731
(512) 539-2626 (phone)
(512) 539-2627 (fax)

OF COUNSEL:

Holt Major Lackey
Texas State Bar No. 24047763
hlackey@dpelaw.com
**DiNovo Price Ellwanger & Hardy LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas 78731
(512) 539-2626 (phone)
(512) 539-2627 (fax)

Robert J. Valli, Jr.
Sara Wyn Kane
James Vagnini
**Valli Kane & Vagnini, LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530

(516) 203-7180 (phone)
(516) 706-0248 (fax)

**ATTORNEYS FOR PLAINTIFFS**